UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SNOWBALL PARK, LLC, | ) |
|         **Plaintiff,** | ) |
|         vs. | ) Cause No. 1:12-cv-00703-WTL-DML |
| SNOWMAGIC, INC., *et al.* | ) |
|         **Defendants.** | ) |

## ENTRY ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on the motion to dismiss filed by the Defendants, SnowMagic, Inc. and Albert Bronander. The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I. STANDARD

The Defendants move to dismiss this case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] When a defendant challenges the Court's personal jurisdiction over it, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, a motion to dismiss is resolved without an evidentiary hearing, the plaintiff=s burden is satisfied if it makes a prima facie case of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "In evaluating whether the prima facie standard has been

---

[1] The Defendants alternatively move to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6). Because this Court lacks personal jurisdiction over the Defendants, this Court need not and does not address the Defendants' arguments related to Rule 12(b)(6).

satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (citations omitted).

Where, as here, there is no applicable federal statute providing for nationwide service of process, a federal district court may exercise personal jurisdiction over a defendant if a court of the state in which it sits would have such jurisdiction. Fed.R.Civ.P. 4(k)(1)(A). This Court sits in Indiana, and Indiana Trial Rule 4.4(A) provides for jurisdiction Aon any basis not inconsistent with the Constitution of this state or the United States"; in other words, Indiana permits the exercise of personal jurisdiction to the full extent permitted by the Federal Due Process Clause.[2] *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

There are two forms of personal jurisdiction that a court may exercise over a non-resident defendant, "general" and "specific" jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). Specific jurisdiction is applicable when the basis of the suit "arises out of or is related to" the defendant=s contacts with the forum state. *Jennings*, 383 F.3d at 549.

> To establish specific jurisdiction under the familiar minimum contacts analysis, a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state and that the exercise of personal jurisdiction over that defendant would comport with traditional notions of fair play and substantial justice.

*Id.* (citations and internal quotation marks omitted). "When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if

---

[2]Snowball Park erroneously asserts that that a two-step analysis is required to determine whether Indiana would exercise personal jurisdiction over a defendant; in other words, the court must first determine whether one of the provisions of Indiana Trial Rule 4.4 applies before conducting the due process analysis. This is no longer correct law and has not been for quite some time. *See LinkAmerica*, 875 N.E.2d at 967. Further, the presence of one of Rule 4.4's enumerated acts alone does not resolve the issue; rather, the due process inquiry must still take place because "[d]ue process limits when a state may exercise personal jurisdiction over nonresident defendants" regardless of the provisions of the state's long-arm statute. *Jennings*, 383 F.3d at 549.

the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir. 2006). Stated another way, the Defendants' contacts with Indiana "must be so extensive to be tantamount to [SnowMagic and Bronander] being constructively present in the state to such a degree that it would be fundamentally fair to require [them] to answer in an Indiana court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research Found.*, 338 F.3d at787.

## II.  BACKGROUND

The relevant facts of record, viewed in the light most favorable to Snowball Park, are as follow.

Plaintiff Snowball Park, LLC, is an Indiana limited liability company, and Rick Madden, the sole member of the organization, is a citizen of the State of Indiana. Snowball Park operates and promotes venues for "snow entertainment." Defendant SnowMagic is incorporated under the laws of Delaware and maintains its principal place of business in New Jersey. SnowMagic rents snowmaking equipment and provides various other related services to its clients. Defendant Bronander is the President of SnowMagic and is a citizen of the State of New Jersey.

In 2008, Madden contacted SnowMagic regarding various potential snow entertainment projects in Indiana and Kentucky.[3] After initial discussions, SnowMagic delivered two proposed contracts to Madden: (1) a Proposal for Services for an Outdoor Snow Park Project in Louisville,

---

[3] It should be noted that the Plaintiff in this matter is Snowball Park, LLC.  The Defendants argue in their motion to dismiss that Snowball Park, LLC is not the proper plaintiff because it was not a party to the contract at issue in this litigation. To be clear, because this Court lacks personal jurisdiction over the Defendants, this Court makes no determination regarding whether Snowball Park has standing to pursue the instant claims.

Kentucky and (2) an Agreement for Services for an Outdoor Snow Park Project in Indianapolis, Indiana. Thereafter, Bronander and another SnowMagic employee, Neil Harris, met with Madden in Indianapolis to discuss the potential snow entertainment opportunities in Indianapolis and Louisville. Ultimately, the contracts were not signed and the events did not occur.

In 2010, Madden and SnowMagic began discussing another possible event in Indianapolis. SnowMagic submitted a proposal to Madden and Snowball Park entitled Snow Making Rental Agreement for Indianapolis Project January 8-16, 2011. Again, the event did not materialize and the proposal was not signed. The parties, however, continued to pursue a possible event in Indianapolis and two additional proposals were submitted to Madden and/or Snowball Park. Despite their attempts, no event occurred in Indianapolis.

In mid-2011, however, it appeared as though a snow entertainment event in Louisville would reach fruition (the "Louisville Event"). Snowball Park entered into a contract with the Kentucky State Fair Board (the "Fair Board") in relation to the project. Additionally, in July, 2011, SnowMagic and Madden entered into an agreement entitled 50ton ICS Mobile Unit Rental Agreement Louisville Project. An amendment to the contract between SnowMagic and Madden was executed on August 29, 2011. Thereafter, in September, 2011, Bronander met with Madden for a second time in Indianapolis to discuss and promote the Louisville Event which was scheduled to take place between November, 2011, and March, 2012. In 2011, Madden and Bronander also discussed the possibility of working together on a project for Connor Prairie in Fishers, Indiana, and for the Super Bowl in Indianapolis in February, 2012.

Eventually, the relationship between SnowMagic and Snowball Park soured and they did not work together on the Lousiville Event or any other event. Snowball Park alleges that after their relationship ended, SnowMagic and Bronander made disparaging statements to the Fair

Board and Sturm Special Effects International, Inc. ("Sturm"), another snow entertainment company, such that the Fair Board and Sturm refused to work with Snowball Park on the Louisville Event. This caused Snowball Park to breach its contract with the Fair Board.

As a result, Snowball Park filed suit against SnowMagic and Bronander on April 19, 2012, alleging the following claims: breach of contract, promissory estoppel, unjust enrichment, tortious interference with a business relationship, and tortious interference with a contractual relationship.[4] The instant motion to dismiss followed.

### III.   DISCUSSION

The Defendants point to the following facts, *inter alia*, in support of their argument that this Court lacks personal jurisdiction over them:

- SnowMagic does not specifically market its services or purposely direct any of its activities to residents of Indiana;

- Aside from SnowMagic's and Bronander's relationship with Madden/Snowball Park, they have never had any other contacts of any kind with Indiana;

- SnowMagic has never been registered to transact business in Indiana;

- SnowMagic has never had a registered agent for service of process in Indiana;

- SnowMagic and Bronander have never had a mailing address or telephone listing in Indiana;

- SnowMagic and Bronander have never maintained any bank accounts in Indiana,

- SnowMagic and Bronander have never commenced any lawsuit in any court in Indiana; and

- SnowMagic has never employed any person in Indiana.

---

[4]Snowball Park's complaint was originally filed in the Marion County Superior Court. The Defendants removed the matter to this Court on May 22, 2012.

Snowball Park, on the other hand, argues that both SnowMagic and Bronander "transacted business in Indiana." Plaintiff's Response at 8. Specifically, Snowball Park maintains that "SnowMagic and Bronander voluntarily came to Indiana for purposes of establishing venues for 'snow entertainment' with Snowball Park." *Id*. Although SnowMagic and Bronander pursued a business relationship with Madden and/or Snowball Park, their limited contacts with the state are not so continuous and systematic that they could reasonably foresee being haled into court in Indiana for any matter. Therefore, Snowball Park has not demonstrated that this Court may exercise general jurisdiction over SnowMagic and Bronander.

Snowball Park also argues that this Court has specific jurisdiction over SnowMagic and Bronander because its claims against SnowMagic and Bronander "arise out of agreements made in Indiana, directed to Indiana, and Defendants' tortious activity that was directed into Indiana." Plaintiff's Response at 9.

In essence, this matter involves an alleged breach of an agreement between an Indiana company and a New Jersey company about a project in Kentucky. Although SnowMagic and Bronander met with Madden in Indianapolis, the contract at issue in this case had no substantial connection with Indiana other than Snowball Park's location in the state. This, alone, is simply not sufficient to permit this Court to exercise personal jurisdiction over the Defendants. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997) (holding that plaintiff's location in Illinois alone was insufficient to support jurisdiction).

Snowball Park argues, however, that specific jurisdiction over SnowMagic and Bronander exists under the "effects doctrine" because the Defendants' tortious activity (i.e., the statements allegedly made to Sturm, a Wisconsin company, and the Fair Board, a Kentucky entity) was aimed at Snowball Park in Indiana and caused Snowball Park to suffer harm in

6

Indiana. Plaintiff's Response at 9. Snowball Park cites to, *inter alia*, *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997) to support its position.

In *Janmark*, the Court noted that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Id*. at 1202. The Seventh Circuit has since held that "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010)).

In this case, Snowball Park alleges a very specific harm, i.e., that SnowMagic's and Bronander's tortious activity affected its ability to follow through with the Louisville Event. *See* Compl. at ¶¶ 20-22. Although Snowball Park argues generally in its brief that "the harm to Snowball Park would be felt in Indiana," Plaintiff's Response at 11, "bad financial consequences for a firm in [the forum state] do not amount to a tort in [the forum state]." *Janmark*, 132 F.3d at 1202. The alleged facts, taken as true, establish that, as a result of SnowMagic's and Bronander's statements, Snowball Park was unable to perform its duties in relation to the Louisville Event. Therefore, Snowball Park's alleged injury occurred in Kentucky. Based on the foregoing, specific jurisdiction does not exist under the effects doctrine.

Further, this Court determines that permitting this suit to continue in Indiana would offend traditional notions of fair play and substantial justice. *See Jennings*, 383 F.3d at 549. Snowball Park simply has not demonstrated that the Defendants "purposefully availed [themselves] of the privilege of conducting activities" in Indiana such that it should be subject to

suit here. *Id*. Therefore, Snowball Park has not demonstrated that this Court may exercise specific jurisdiction over SnowMagic and Bronander.

## IV.     CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is **GRANTED** and this case is dismissed without prejudice.[5]

SO ORDERED: 02/01/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[5] Although the Defendants did not expressly move this Court to transfer this matter to another district, the Defendants included a footnote in their brief noting that this Court may, if appropriate, transfer this matter to the United States District Court for the District of New Jersey. Because more than one district may be an appropriate forum, this Court declines to transfer the case.